**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| William W. Castle, | ) No. CV 09-8114-PCT-MHM (DKD) |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Eurofresh, Inc., et al., | ) |
| Defendants. | ) |

Plaintiff William W. Castle filed this civil rights action under the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA) against Eurofresh Farms, Inc. (Eurofresh); the State of Arizona, the Arizona Department of Corrections (ADC); Dora Schriro, former Director of ADC; and Charles Ryan, current Director of ADC (State Defendants). (Doc. #1.) Eurofresh moves to dismiss, and the motion is fully briefed. (Doc. ##20, 24, 28.) State Defendants separately move to dismiss. (Doc. #27.) That motion is also fully briefed. (Doc. ##32, 33.)

The Court will grant the motions and dismiss the Complaint with leave to amend as set forth in this Order.

**I.    Background**

In his Complaint, Plaintiff alleged that, as a result of injuries he sustained in 1996 while serving in the military, he has a permanent disability that substantially limits one or more major life activities; specifically, he has pain and swelling and difficulty walking and

standing for extended periods due to an ankle injury. (Doc. #1 ¶ 14.) Plaintiff alleged that because of his disability, he was denied participation in the Arizona Correctional Industries (ACI) program. Plaintiff asserted that Eurofresh, a private corporation doing business as Eurofresh Farms, contracted for prisoner labor from the other Defendants through the ACI program. (Id. ¶¶ 1, 5.) Plaintiff further asserted that he was employed by Eurofresh, through ACI, where he worked at the Snowflake facility from approximately July 27, 2008 until November 28, 2008. (Id. ¶ 19.) Plaintiff claimed that on October 15 and November 10, he requested a reasonable accommodation for his disabilities and that his requests were ignored. As exhibits to the Complaint, Plaintiff attached EEOC documents (id., Ex. 1), ADC grievance documents (id., Ex. 2), Department of Veterans Affairs documents regarding Plaintiff's disability claim (id., Ex. 3), Inmate Work Contract (Contract) between ADC and Eurofresh, with attachments (id., Ex. 4), and letters to Eurofresh and ACI requesting accommodations (id., Ex. 5).

The Complaint raised six Counts as follows:

Count I: Schriro, ADC, and Eurofresh violated Title I of the ADA when they denied Plaintiff reasonable accommodation for his disability;

Count II: Schriro, Ryan, ADC, and the State of Arizona violated Title II of the ADA when they denied Plaintiff access to the ACI program;

Count III: Defendants' actions violated § 504 of the RA of 1973;

Count IV: Defendants' actions violated the Arizona Civil Rights Act (ACRA);

Count V: Eurofresh violated its contract with the State Defendants, of which Plaintiff is a third-party beneficiary, by failing to comply with the ADA; and

Count VI: Defendants' conduct constituted the intentional infliction of emotional distress. (Doc. #1.)

The Court directed Defendants to answer the Complaint.[1] (Doc. #11.)

Eurofresh moves to dismiss on the grounds that Plaintiff fails to state a claim because he (1) lacks standing to assert an ADA claim because he is not an employee of Eurofresh;

---

[1]The screening Order did not address Count VI.

1   (2) cannot state a claim under the RA because Eurofresh does not receive federal financial

2   assistance; (3) cannot state a claim under the ACRA because Eurofresh is not a place of

3   public accommodation; (4) cannot establish a breach of the inmate work contract because

4   Eurofresh did not violate federal or state employment statutes; and (5) cannot state a claim

5   for intentional infliction of emotional distress because he cannot establish extreme and

6   outrageous conduct.  (Doc. #20.)

7       The State Defendants move to dismiss on the grounds that (1) Schriro and Ryan are

8   improper parties because they are not employers; (2) inmates are not employees of the state

9   or ADC and have no protectable interest in a prison job assignment or program; (3)

10  Plaintiff's claim for an accommodation is moot; and (4) Plaintiff's state-law claims must be

11  dismissed because he did not sustain the requisite "serious physical injury."  (Doc. #27.)

12  **II.     Federal Rule of Civil Procedure 12(b)(6)**

13      **A.     Preliminary Matter**

14      Plaintiff asserts that because the Court screened Plaintiff's Complaint pursuant to 28

15  U.S.C. § 1915 A(a) and found that it met the pleading threshold of Ashcroft v. Iqbal, 129 S.

16  Ct. 1937 (2009), and directed Defendants to answer the Complaint, the motions to dismiss

17  should be denied as redundant.[2]  (Doc. #24 at 3.)

18      Eurofresh argues that a Rule 12(b)(6) motion is appropriate where, as here, the claims

19  are complex and the moving papers assist the court in evaluating the applicable authorities.

20  (Doc. #28 at 1-2, citing Wakefield v. Tilton, 2009 WL 2705701, at *3 (E.D. Cal. 2009)

21  (granting motion to dismiss after statutory screening); see also Johnson v. Runnels, 2008 WL

22  508399, at *5 (E.D. Cal. 2008) (clarifying statutory screening order to dismiss claim in light

23  of defendant's motion to dismiss).[3]

24      The Court agrees that the 12(b)(6) motions are appropriate due to the complexity of

25  the claims and notes that at the time of screening, it did not have the benefit of briefing by

26

27      [2]Plaintiff makes the same argument regarding the State Defendants' motion.  (Doc.
    #32 at 4-5.)

28
        [3]State Defendants make the same argument.  (Doc. #33 at 1, n.2.)

the parties. <u>See also</u> 42 U.S.C. § 1997e ("The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action . . . fails to state a claim upon which relief can be granted. . . ."). The Court will consider the motions.

**B.**      **Rule 12(b)(6)**

To state a claim, Federal Rule of Civil Procedure 8(a)(2) requires " a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice. <u>Id.</u> (citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). In other words, while Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." <u>Id.</u> Dismissal may be based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.1990).

Although courts will not normally look beyond the pleadings in resolving a Rule 12(b)(6) motion, <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688 (9th Cir.2001), a "court may consider material that the plaintiff properly submitted as part of the complaint or, even if not physically attached to the complaint, material that is not contended to be inauthentic and that

is necessarily relied upon by the plaintiff's complaint."[4] Id. And a court may disregard allegations of the complaint that are contradicted by attached exhibits. Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295 (9th Cir. 1998); Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir.1987). Furthermore, the court is not required to accept as true allegations contradicted by judicially noticed facts. Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987). The court may consider matters of public record, including pleadings, orders, and other papers filed with the court. Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir.1986) (abrogated on other grounds by Astoria Federal Savings and Loan Ass'n v. Solimino, 501 U.S. 104 (1991)). "The court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994). Nor must the court accept unreasonable inferences or unwarranted deductions of fact. Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

## III. Eurofresh's Motion to Dismiss

### A. Count I—ADA Title I

#### 1. Parties' Contentions

Eurofresh asserts that the Court should dismiss Plaintiff's ADA claims against it because courts have consistently held that prisoners lack standing to assert violations of federal employment statutes because prison work programs do not create traditional employment relationships. (Doc. #20 at 3.) They argue that in a case under the Fair Labor Standards Act (FLSA), the Ninth Circuit held that inmates who "worked for programs structured by the prison pursuant to the state's requirement that prisoners work at hard labor," were not "employees" because "the economic reality is that their labor belonged to the institution." Hale v. State of Arizona, 993 F.2d 1387, 1395 (9th Cir. 1993). The court reasoned that the economic reality of the relationship between the worker and the entity for

---

[4]Both Plaintiff and State Defendants submit additional materials with their pleadings. The Court will not consider these additional exhibits.

which work was performed lies in the relationship between prison and prisoner. It is penological, not pecuniary." Id. Defendants argue that the Ninth Circuit has clarified that Hale applies to a broad range of federal employment statutes. See Coupar v. U.S. Dep't of Labor, 105 F.3d 1263, 1264 (9th Cir. 1997). In Coupar the Ninth Circuit held that an inmate's retaliation claims under the Clean Air Act and the Toxic Substances Control Act were barred because, as an inmate, he was obligated to work at some job pursuant to a prison work program, and that fact alone brought him within the rule of Hale. Id. They also assert that other circuits have extended the Hale rationale to ADA cases.

Plaintiff argues that no courts within the Ninth Circuit have held that prisoners like him lack standing to assert Title I ADA violations. (Doc. #24 at 4.) He argues that Hale was a minimum wage case under the Fair Labor Standards Act and the court held that the FLSA does not categorically excluded all labor of any inmate. (Id., citing Hale, 993 F. 2d at 1392.) He argues that in Baker v. McNeil Island Corrs. Ctr, 859 F.2d 124, 127-28 (9th Cir. 1988), the court held that a prisoner could be an employee for purposes of Title VII when he was denied employment in the prison law library. Thus, although prisoners may not be employees for purposes of the FLSA, they may be employees for purposes of Title I of the ADA. Title II of the ADA applies to state prisoners. (Id., citing Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206 (1998))

Plaintiff asserts that an employee is an individual employed by an employer. 42 U.S.C. § 12111(4). He argues that when Congress has used the term "employee" without defining it, the Supreme Court has concluded that Congress intended to describe the conventional master-servant relationship as understood by common law agency doctrine. Clackmas Gastroenterology Assocs. P.C. v. Wells, 538 U.S. 440, 445 (2003); Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-33 (19192). Plaintiff asserts that at common law, the relevant factors defining the master-servant relationship focus on the master's control over the servant. Restatement (second) of Agency § 2(2) (1957).

Plaintiff further argues that his situation is different from other cases: Eurofresh is a private for-profit corporation, Plaintiff's employment was voluntary, Plaintiff was required

to travel about 70 miles to the Eurofresh facility; and Eurofresh determined the amount of pay and bonuses, which are "significant" and are not included as part of the contract. (Doc. #24 at 5-6.)

Eurofresh replies that <u>Baker</u> has no application where an inmate performs work pursuant to a prison work requirement. (Doc. #28 at 2.) The Ninth Circuit noted that Baker "alleged that the position he sought 'would have given him an opportunity to become an employee of the Washington State Library' and that such employment 'was out of the prison setting and context.'" <u>Coupar</u>, 105 F.3d at 1266 (quoting <u>Baker</u>, 859 F.2d at 126). Eurofresh asserts that the Ninth Circuit clarified in <u>Coupar</u> that <u>Baker</u> has no application to inmates who work for programs structured by the prison. (<u>Id.</u>, citing <u>Baker</u>, 859 F.2d at 126) (noting that "Baker did not allege that the library position he sought was one that fulfilled a prison work requirement.") Eurofresh asserts that Plaintiff admits that his relationship with Eurofresh arose from a prison work program—ACI, so <u>Hale</u> controls.

### 2. Analysis

Title I of the ADA prohibits the States and other employers from "discriminat[ing] against a qualified individual with a disability because of th[at] disability . . . in regard to . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The Court finds that Plaintiff was not an employee of Eurofresh for purposes of protection under the ADA.

Plaintiff is correct that the Ninth Circuit has not held that prisoners are not employees with standing to assert Title I claims; however, applying <u>Hale</u> and <u>Coupar</u> to the facts presented here, the Court determines that such a conclusion is warranted in this case. In both <u>Hale</u> and <u>Coupar</u>, the Ninth Circuit applied an "economic reality" test to determine if an inmate was an employee for purposes of the federal FLSA or Whistleblower statute. When an inmate is "working for a prison, in a program structured by the prison pursuant to state law requiring prisoners to work at hard labor," <u>Hale,</u> 993 F. 2d at 1393, "the economic reality of the relationship between the worker and the entity for which work was performed lies in the relationship between prison and prisoner. It is penological, not pecuniary." <u>Coupar</u>, 105 F.3d at 1295 (quoting <u>Hale</u>, 993 F.2d at 1395). The Ninth Circuit specifically

rejected application of the conventional master-servant relationship test urged by Plaintiff to such inmate labor or, put another way, reasoned that such inmates and the statutorily created entities that set up their work programs are *not* in a conventional master-servant relationship. Coupar, 105 F. 3d at 1267.

Arizona requires its prisoners to work. Ariz. Rev. Stat. Ann. ("A.R.S.") § 31-251(A),(B)(1). Arizona prison authorities have structured programs for inmate labor; inmates can work for ACI, which is organized pursuant to A.R.S. §§ 41-1621 *et seq.* and operated by the Department of Corrections. Thus, the allegations in the Complaint show that, as in Hale and Coupar, Plaintiff was "working for a prison, in a program structured by the prison pursuant to state law requiring prisoners to work at hard labor." See Hale, 993 F.2d at1393. The Court finds that it is not relevant that Eurofresh is a private corporation or may have determined pay and bonuses. See Morgan v. MacDonald, 41 F.3d 1291, 1293 (9th Cir. 1994) ("That the prison contracted with another public agency to oversee day-to-day operations of the Education Center does not change the reality that this was a "prison structured" program, as was the program in Hale."). And it is of no legal significance that Plaintiff's employment with Eurofresh was voluntary. See Coupar, 105 F. 3d at 1265 (noting that although the plaintiff did not have to work for a particular entity, he was still obligated to work).

Plaintiff was not an employee of Eurofresh for purposes of Title I of the ADA, and his Count I claims as to Eurofresh will be dismissed with prejudice.

**B.     Count III—RA**

**1.     Parties' Contentions**

Eurofresh asserts that Plaintiff cannot state a claim under the RA because the Act only applies to programs or activities "receiving federal financial assistance." (Doc. #20 at 5.) Eurofresh disputes Plaintiff's allegation that it indirectly receives federal assistance via its contract with the other Defendants; it asserts that the allegation is contradicted by the Inmate Work Contract. Eurofresh argues that the Contract shows that it paid for all of the inmate services it received from ACI in the form of: (1) inmate wages; (2) the cost of supervision

by Correctional Officers; (3) ACI management fees; (4) transportation; (5) minimum wage surcharges; and (6) utilities. (Id., ref. Doc. #1, Ex. 4., Attach. #2.) Eurofresh argues that, therefore, even if ACI received federal funding for its inmate work programs, the contract shows Eurofresh did not. (Id.)

Plaintiff argues that the Contract indirectly confers benefits and federal financial assistance on Eurofresh: it does not have to pay worker's compensation insurance or Social Security or Medicare taxes. (Doc. #24 at 6-7.) And the Contract included provisions that Eurofresh would comply with state and federal discrimination statutes. Plaintiff argues that he should be allowed to discover the extent to which Eurofresh receives federal financial assistance. (Doc. #24 at 7.)

Eurofresh replies that with regard to Social Security or Medicare taxes, the Contract requires ACI, not Eurofresh, to disburse appropriate payments to inmates, so ACI is responsible for Social Security or Medicare taxes. (Doc. #28 at 3.) As to Plaintiff's request for discovery, Eurofresh argues that plaintiff's are not permitted to "fish" for claims during discovery. (Id. at 4, citing Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004).)

**2.      Analysis**

The RA provides in relevant part that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). The RA does not define "federal financial assistance," but courts have held that receipt of an indirect benefit could bring an entity within the scope of § 504. Jacobson v. Delta Airlines, Inc., 742 F.2d 1202, 1212 (9th Cir. 1984) (but concluding that grant of a license and airport grants, weather services, and air traffic control services are not indirect federal financial assistance to an airline for purposes of the RA).

Plaintiff's sole argument is that Eurofresh received an indirect benefit in that it did not pay worker's compensation insurance or Social Security or Medicare taxes. Eurofresh responds that, under the Contract, the responsibility for payment of Social Security and

Medicare would be ACI's. That is not indirect financial assistance to Eurofresh. Plaintiff does not claim to be a federal employee and any exclusion from having to pay state worker's compensation insurance cannot be *federal* financial assistance; such an exclusion would be based on state law. See A.R.S. § 31-254 (J). Finally, Plaintiff alleged that Eurofresh benefits indirectly because it pays less than the prevailing wage normally paid to non-prisoners and therefore has an unfair advantage in interstate commerce. (Doc. #1 ¶ 42.) But this is too conclusory to pass muster under Iqbal, 129 S. Ct. 1949, and, as Eurofresh points out, the Contract discloses that Eurofresh pays amounts in addition to the wages paid to inmates.

Plaintiff's request for discovery on this issue is not proper. The purpose of Rule 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery. Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 738 (9th Cir. 1987).

But the Court cannot find at this time that Plaintiff could not amend the complaint to state a claim. Therefore, the Court will dismiss Count III against Eurofresh without prejudice.

### C. Count IV—ACRA

#### 1. Parties' Contentions

Eurofresh asserts that the state ACRA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation." (Doc. #20 at 5, citing A.R.S. § 41-1492.02(A)) Under this statute, a public accommodation is defined to include, among other things, places of lodging, restaurants and bars, theaters, stadiums, concert and lecture halls, auditoriums, convention centers, museums, libraries, public transportation stations, retail establishments, service establishments, social service establishments, places of recreation and schools. (Id. at 5-6; Nolan v. Starlight Pines Homeowners Ass'n, 216 Ariz. 482, 485, 167 P.3d 1277, 1280 (Ariz. 2007) (citing A.R.S. § 41-1492(9)(a)-(l)) Eurofresh argues that "a facility is not regarded as a public

accommodation unless it is open indiscriminately to other members of the general public." Nolan, 216 Ariz. at 486 (internal quotations omitted). An "occasional use of a private facility by the general public is not sufficient to convert that facility into a public accommodation." Id. (internal quotations omitted).

Eurofresh asserts that it is not a "place of public accommodation." The Complaint shows that Eurofresh is an agricultural facility that is closed to the public. (Doc. #20 at 6, ref. Contract at 1, 13.) The Contract requires Eurofresh to restrict access to its facility, as follows:

> **The visiting of an inmate by any unauthorized person shall not be permitted.** If any person is found visiting with an inmate, his or her name and description shall be given to institution authorities. If it is not possible or feasible to obtain names, other identification such as automobile make, description and license number shall be obtained when possible.

(Id. at 13) (emphasis in original). Eurofresh asserts that because it is not "indiscriminately" open to "members of the general public," Plaintiff cannot state a claim under the ACRA.

Plaintiff asserts that Eurofresh has an "open door" tour policy and regularly gives tours of its Snowflake facility and, although persons who want to enter must check in with security and management, they can still tour the facility. Therefore, it is a "public accommodation" with the meaning of Nolan. (Doc. #24 at 7.)

In its reply, Eurofresh asserts that supervised, guided tours of the facility do not make the facility a public accommodation because it is not open *indiscriminately* to other members of the general public. (Doc. #28 at 4.)

## 2. Analysis

Arizona law prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation." A.R.S. § 41-1492.02(A). A public accommodation is defined to include, among other things, places of lodging, restaurants and bars, theaters, stadiums, concert and lecture halls, auditoriums, convention centers, museums, libraries, public transportation stations, retail establishments, service establishments, social service establishments, places of recreation and schools. A.R.S. § 41-1492(9)(a)-(l) (2004).

The Court will dismiss Eurofresh from Count IV.  The ACRA does not apply to Eurofresh unless it is a place of public accommodation.  Although Plaintiff asserts in his Complaint that *ADC* is a public entity, his only allegation as to Eurofresh regarding this issue is that it contracts for prisoner labor from the State Defendants.  (Doc. #1 ¶¶ 51-52.) He does not allege that Eurofresh is, for example, a retail enterprise.  And although Plaintiff asserts in his response that Eurofresh regularly gives tours of its facility to the public, he points to no such allegation in his Complaint.  Moreover, as the Complaint states, Eurofresh is a private corporation, and apparently the Snowflake facility operates a farm.  "A facility is not regarded as a public accommodation unless it is open "indiscriminately to other members of the general public."  <u>Nolan</u>, 167 P.3d at 1281 (quoting <u>Jankey v. Twentieth Century Fox Film Corp.</u>, 14 F. Supp. 2d 1174, 1178 (C.D. Cal. 1998) ("occasional use of . . . [a] private facility by the general public is not sufficient to convert that facility into a public accommodation" for purposes of the ADA).  The Court finds that  tours of a private facility, otherwise not open to members of the general public, would not make it a public accommodation.

But, again, the Court cannot find at this time that Plaintiff could not amend the complaint to state a claim under the ACRA.  Therefore, the Court will dismiss Count IV against Eurofresh without prejudice.

### D. Count V—Breach of Contract

#### 1. Parties' Contentions

Eurofresh argues that because the claim for breach of contract is premised on claims under the ADA, RA, and ACRA, and these claims fail, Plaintiff fails to state a claim for breach of contract.  (Doc. #28 at 5.)  Plaintiff argues that because he states claims under the ADA, RA, and ACRA, he states a claim for breach of contract.  (Doc. #24 at 8.)

#### 2. Analysis

Because the Court is dismissing Counts I, II, and IV against Eurofresh, no breach of contract claim remains.  The Court will dismiss Count V.

///

///

### E. Count VI—Intentional Infliction of Emotional Distress

#### 1. Parties' Contentions

Eurofresh contends that to state a claim for intentional infliction of emotional distress, a plaintiff must plead sufficient facts showing that: (1) the conduct by the defendant is "extreme" and "outrageous"; (2) the defendant either intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from his conduct; and (3), severe emotional distress occurred as a result of defendant's conduct. (Doc. #20 at 7, citing Citizen Publishing Co. v. Miller, 115 P.3d 107, 110 (Ariz. 2005)) "Only when reasonable minds could differ in determining whether conduct is sufficiently extreme or outrageous does the issue go to the jury." Mintz v. Bell Atlantic Sys. Leasing Int'l, Inc., 905 P.2d 559, 563 (Ariz. App. 1995). A plaintiff must plead facts that show "the defendant's conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Johnson v. McDonald, 3 P.3d 1075, 1080-81 (Ariz. App. 1999) (dismissing claim for intentional infliction of emotional distress where plaintiff failed to plead any conduct "so outrageous that it goes beyond all bounds of decency").

Eurofresh contends that Plaintiff's claim rests on the general allegations of his Complaint—that Eurofresh failed to create a position that could accommodate Plaintiff's disability. (Doc. #20 at 8, ref. Doc. #1 ¶¶ 61-64.) It asserts that, as a matter of law, an employment decision cannot satisfy the extremely high burden of proof to demonstrate intentional infliction of emotional distress.

> In light of the extremely high burden of proof for demonstrating intentional infliction of emotional distress in Arizona, no reasonable jury could find [the defendant's] actions in terminating [the plaintiff] without severance 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.' This type of termination goes on every day in the corporate world . . . .

Bodett v. CoxCom, Inc., 366 F.3d 736, 747 (9th Cir. 2004).

Plaintiff asserts that Bodett is not persuasive because it is a wrongful termination claim and that there are many cases regarding large rewards for emotional distress related to

violation of federal disability discrimination law.  (Doc. #24 at 8, citing <u>Moorer v. Baptist</u> <u>Memorial Health Care System</u>, 398 F.3d 469 (6th Cir. 2005); <u>Praseuth v. Rubbermaid, Inc.</u>, 406 F. 3d 1245 (10th Cir. 2005))

In its reply, Eurofresh reiterates the arguments presented in its motion.  (Doc. #28.)

## 2.  Analysis

The Court will dismiss Count VI for failure to state a claim for intentional infliction of emotional distress.  The only real conduct alleged regarding any of the various Defendants was the failure to provide accommodations, which the Court finds does not constitute "extreme and outrageous" conduct.  Plaintiff's authorities to not support his position. <u>Moorer</u>, 398 F.3d 469, and <u>Praseuth</u>, 406 F. 3d 1245, involved awards for emotional distress for violations of the ADA and other federal and state statutes; they are not cases asserting the separate and distinct state tort of intentional infliction of emotional distress.

But the Court cannot find at this time that Plaintiff could never state a claim for intentional infliction of emotional distress, so it will dismiss the claim without prejudice. The court in <u>Mintz</u> noted that "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress"; it did not hold that conduct in an employment context can never satisfy the high burden.  <u>Mintz</u>, 905 P.2d at 554 (quoting <u>Cox</u> <u>v. Keystone Carbon Co.</u>, 861 F.2d 390, 395 (3d Cir. 1988)).

## IV.  State Defendants' Motion to Dismiss

### A.  Counts I-IV (Discrimination Claims)

#### 1.  Parties' Contentions

##### (a)  Defendants

State Defendants argue that as to Counts I through IV, Plaintiff alleged that Defendants discriminated against him because Plaintiff was not given the job of his choice when he was disabled and unable to perform his job duties.  (Doc. #27 at 9.)  They assert that, under Arizona law, inmates generally are required to engage in "hard labor," meaning "compulsory physical activity for the attainment of some object other than recreation or

amusement but does not include physical activity that is not within the ability of an individual prisoner."  (Doc. #27 at 9, citing A.R.S. § 31-251(A), (B), (D))    A prisoner receives a work assignment "commensurate and compatible with the condition and limitations of his physical and mental health."  A.R.S. § 31-251(B)(1).   Prisoners are not employees of the State or of ADC, even if paid:

> . . . no prisoner given a work assignment or required to perform any labor by the department of corrections shall be considered an employee or to be employed by the state or the state department of corrections . . . nor shall an employee-employer relationship exist between the prisoner and the state department of corrections or the state for any purpose and none of the rights or privileges otherwise accorded to employees by law shall accrue to such prisoners.

A.R.S. § 31-251(E).

Defendants further assert that inmates do not have a constitutional right to educational or vocational programming in prison, either in general or to specific programming.  (Doc. #27 at 9, citing Rhodes v. Chapman, 452 U.S. 337, 348 (1981); Montanye v. Haymes, 427 U.S. 236, 243 (1976))   Nor do prisoners have a constitutional right to a prison job or particular educational or vocational training.  See Baumann v. Arizona Dep't of Corrections, 754 F.2d 841, 846 (9th Cir.1985).

### (b)    Plaintiff

Plaintiff argues that Defendants' reliance on A.R.S. § 31-254 is misplaced because the issue is whether state prisoners are employees within the scope of the ADA and RA and, under the Supremacy Clause, the state statute has no effect.  (Doc. #32 at 5, citing Hale, 993 F.2d at 1395)  He reasserts his arguments under Baker, 859 F.2d at 127-28.[5]

He concedes that inmates do not have a constitutional right to educational or vocational programs but argues that once a program or opportunity is offered to similarly situated state prisoners, those prisoners are entitled to like treatment under the Equal Protection Clause.  (Doc. #32 at 6.)

/ / /

---

[5]These arguments are set forth in section III (A)(1) of this Order.

1

        **(c)**    **Reply**

2       Defendants argue that Plaintiff's reliance upon the Equal Protection Clause is

3  misguided; they assert that this argument was rejected by the Supreme Court. See Bd. of

4  Trs. of the Univ. of Ala., et al. v. Garrett, et al., 531 U.S. 356, 367 (2001) (if special

5  accommodations for the disabled are to be required, they have to come from positive law and

6  not through the Equal Protection Clause). They contend that Plaintiff cannot show that

7  Defendants violated his rights, and thus his claims under the ADA are properly dismissed.

8         **2.**    **Analysis**

9       Although Plaintiff is correct that the State Defendants cannot rely on A.R.S. § 31-254,

10  the Court has already held that Plaintiff is not an employee for purposes of Title I of the

11  ADA.[6] (See § III(A)(2) of this Order.) Therefore, the Court will dismiss State Defendants

12  with prejudice from Count I, and because no Defendants remain, the Court will dismiss

13  Count I with prejudice.

14       State Defendants also assert Eleventh Amendment immunity as to the ADA Title II

15  and RA claims but incorrectly cite to Garrett to support such immunity. (Doc. #27 at 8.) In

16  fact, the Supreme Court has held that insofar as Title II creates a private cause of action for

17  damages against the States for conduct that actually violates the Fourteenth Amendment,

18  Title II validly abrogates state sovereign immunity. U.S. v. Georgia, 546 U.S. 151, 159

19  (2006). In Georgia, a paraplegic state prison inmate brought claims for damages and

20  injunctive relief under Title II of the ADA. Id. at 154.

21       In addition, under Georgia, lower courts must use the following three-step analysis,

22  on a claim-by-claim basis, in determining whether or not Eleventh Amendment immunity

23  applies to such claims: (1) determine which aspects of the State's alleged conduct violated

24  Title II of the ADA; (2) determine to what extent such misconduct also violated the

25  _____

26       [6]Defendants also argue that the claim is barred by the Eleventh Amendment. (Doc. #27 at 8.) State Defendants have immunity as to the Title I ADA claims. Bd. of Trs. of the

27  Univ. of Ala., et al. v. Garrett, et al., 531 U.S. 356, 374 (2001). The Court rejects Plaintiff's argument that the State gave him notice of his right to sue and that this consent waives

28  Eleventh Amendment immunity. (Doc. #32 at 9, ref. Doc. #1, Ex. 1.)

Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, determine whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid. <u>Georgia</u>, 546 U.S. at 159. The second and third steps of the analysis need only be considered if a plaintiff has a viable claim under step one.[7]

First the Court must address which aspect of the State's alleged conduct violated Title II. To state a claim under Title II of the ADA, a plaintiff must show: (1) he is a "qualified individual with a disability"; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.[8] <u>See</u> 42 U.S.C. § 12132.

And "[t]o recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant." <u>Duvall</u>, 260 F.3d at 1138 (9th Cir. 2001). To establish intentional discrimination under the ADA, the plaintiff must show defendants acted with "deliberate indifference." <u>Id.</u> (emphasis added). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." <u>Id.</u> at 1139.

A disability within the meaning of the statute is a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. §

---

[7]"The Rehabilitation Act is materially identical to and the model for the ADA, except that it is limited to programs that receive federal financial assistance . . . ." <u>Armstrong v. Davis</u>, 275 F.3d 849, 862 n. 17 (9th Cir. 2001) (internal quotations omitted). Title II of the ADA was expressly modeled after § 504 of the RA. <u>Zuckle v. Regents of the Univ. of Cal.</u>, 166 F.3d 1041, 1045 n. 11 (9th Cir. 1999) ("there is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act").

[8]To state a claim under the Rehabilitation Act, a plaintiff must allege "(1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." <u>Duvall v. County of Kitsap</u>, 260 F.3d 1124, 1135 (9th Cir. 2001).

12102.  See also A.R.S. § 41-1492(5).

State prisons are considered public entities for the purposes of an ADA claim. Pa. Dep't. of Corrs. v. Yeskey, 524 U.S. 206, 210 (1998) (noting that "[m]odern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in'")). In Yeskey, the Court held that a prisoner stated a claim under Title II where he alleged that, based on his medical history of hypertension, he was refused admission to a Motivational Boot Camp program for first-time offenders, the successful completion of which would have resulted in parole in six months.  Id. at 208, 213.

Here, Plaintiff alleges that he is a qualified individual with a disability and that he was denied access to the ACI program on or about November 10, 2008.  (Doc. #1 29-30.)  He also alleges that Defendants engaged in the unlawful practices in that they denied him

> —an individual with a disability who, with or without reasonable modifications to rules, policies, or practices; the removal of architectural, communication, or transportation barriers; or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by Defendants—access to the ACI program.

(Id. ¶ 34, quoting 42 U.S.C. § 12131(2))

Plaintiff's exhibits show that Plaintiff had an injury that he alleged made him "unable to walk for long periods of time without extreme physical pain" and that his work assignment was tomato picking.  (Id., Ex. 5, letter to ACI, dated Oct. 15, 2008.)  In requesting accommodations, he also asserted that other inmates had worked in the pack house and other positions.  (Id.)  He requested a position at the Snowflake facility that "does not require walking for long periods of time, as well as pushing heavy carts."  (Id.)

The State Defendants argue that Plaintiff's VA disability rating does not establish that Plaintiff is disabled under the ADA.  (Doc. #27 at 10, citing Thorn v. BAE Sys. Haw. Shipyards, Inc., 586 F. Supp. 2d 1213, 1221 (D. Haw. 2008))  But the issue in a Rule 12(b)(6) motion is not whether a plaintiff establishes his claim but whether he has stated one.

The court in <u>Thorn</u> noted that, on summary judgment, the plaintiff's VA disability status substantiated that he had impairments but that evidence of impairments, without more, was insufficient to show that the impairments substantially limited a major life activity.   <u>Id.</u> Thus, <u>Thorn</u> does not support dismissal for failure to state a claim.

Nevertheless, the Court finds that Plaintiff, in fact, fails to state a claim under ADA Title II or the RA.[9]  Plaintiff's own evidence shows that he was given a different work assignment—one that does not require prolonged standing and walking.  (Doc. #1, Ex. 2.) Therefore, it does not appear that Plaintiff was denied access to a work program.

The Court cannot find at this time, however, that Plaintiff could not amend the complaint to state a claim under the ADA, Title II or the RA.  Therefore, the Court will dismiss Counts II and III against the State Defendants without prejudice.

**B.      Counts IV, V, and VI (State-Law Claims)**

**1.      Parties' Contentions**

Schriro and Ryan assert that Plaintiff's  state-law claims against them—Counts IV, V, and VI—should be dismissed because "[a]ny and all causes of action which may arise out of tort caused by the director, prison officers or employees of the department, within the scope of their legal duty, *shall run only against the state.*"  (Doc. #27 at 7-8, citing A.R.S. § 31-201.01(F) (emphasis added).)

Defendants also assert that state law strictly limits the state-law causes of action that prison inmates may assert against the government and government employees:

> A person who is convicted of a felony offense and who is incarcerated while awaiting sentence or while serving a sentence imposed by a court of law may not bring a cause of action seeking damages or equitable relief from the state or its political subdivisions, agencies, officers or employees for injuries suffered while in the custody of the state or its political subdivisions or agencies unless the complaint alleges specific facts from which the court may conclude that the plaintiff suffered serious physical injury or the claim is authorized by a federal statute.

(Doc. #27 at 12, citing A.R.S. § 31-201.01(L).)   A "serious physical injury" is "an

---

[9]State Defendants do not explain how their analysis applies to claims under the ACRA.

impairment of physical condition that creates a substantial risk of death or that causes serious disfigurement, prolonged impairment of health or prolonged loss or impairment of the function of any bodily organ." A.R.S. § 31-201.01(N)(2).

Defendants argue that the statutory restriction applies to all claims and bars tort actions that either are not based on federal law or do not cause the requisite serious physical injury. (Doc. #27 at 12, citing Tripati v. State, 16 P.3d 783 (Ariz. App. 2000) (prisoner needed to show serious physical injury for court to exercise jurisdiction, even when inmate alleged property deprivation including legal materials related to his conviction).

In response, Plaintiff argues that he has alleged such an injury because he claims that Defendants' unlawful practices "aggravated his permanent physical disability and elevated his physical pain." (Doc. #32 at 11, ref. Doc. #1 ¶ 15)

In their reply, Defendants reiterate the arguments presented in their motion. (Doc. #33 at 3-4.)

### 2. Analysis

The Court will dismiss the state law claims—Counts IV, V, and VI. State law claims may only be brought against the State; Schriro and Ryan are not proper parties. A.R.S. § 31-201.01(F). In addition, the Court holds that as to Plaintiff's state-law claims against the State, a vague allegation of an aggravated injury and pain is not a "serious physical injury" within the meaning of A.R.S. § 31-201.01(N)(2). The Court will dismiss the claims without prejudice.

The Court need not consider State Defendants' remaining arguments.

## V. Conclusion

Based on the foregoing,

**IT IS ORDERED**:

(1) The reference to the Magistrate Judge is withdrawn as to Defendant Eurofresh's Motion to Dismiss (Doc. #20) and Defendants State of Arizona, ADC, Schriro, and Ryan's Motion to Dismiss (Doc. #27).

(2) Defendant Eurofresh's Motion to Dismiss (Doc. #20) is **granted.**

(3)  The claims against Eurofresh in Count I are **dismissed with prejudice**.  The claims in Counts III, IV, and V, and VI are **dismissed without prejudice**.

(4)  State Defendants' Motion to Dismiss is **granted** (Doc. #27).

(5)  The claims against the State Defendants in Count I are **dismissed with prejudice**. The claims in Counts II, III, IV, V, and VI are **dismissed without prejudice**.

(6)  The Complaint (Doc. #1) is **dismissed** for failure to state a claim.  Plaintiff has **30 days** from the date this Order is to file a first amended complaint in compliance with this Order.

(7)  If Plaintiff fails to file an amended complaint within 30 days, the Clerk of Court must, without further notice, enter a judgment of dismissal of this action with prejudice that states that the dismissal may count as a "strike" under 28 U.S.C. § 1915(g).

(8)  **If Plaintiff files an amended complaint within 30 days, the Court will issue a screening order pursuant to 28 U.S.C. § 1915A; Defendants must NOT answer the Complaint or otherwise respond by appropriate motion pursuant to Rule 12(a) of the Federal Rules of Civil Procedure until after the Court issues its screening order.**

(9)  The Clerk of Court must mail Plaintiff a court-approved form for filing a civil rights complaint by a prisoner.

DATED this 8th day of March, 2010.

Mary H. Murguia
United States District Judge