**WO**                                                                                          SVK

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| William W. Castle, | No. CV 09-8114-PCT-MHM (DKD) |
| Plaintiff, | **ORDER** |
| vs. | |
| Eurofresh, Inc., et al., | |
| Defendants. | |

On June 30, 2009, Plaintiff, who is confined in the Arizona State Prison Complex-Coronado in Winslow, Arizona, filed a *pro se* civil rights Complaint; he paid the filing fee on August 3, 2009. (Doc. ##1, 6.) Plaintiff's Complaint raised multiple claims, including claims under the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA) against Eurofresh Farms, Inc. (Eurofresh); the State of Arizona, the Arizona Department of Corrections (ADC); Dora Schriro, former Director of ADC; and Charles Ryan, current Director of ADC (State Defendants). (Doc. #1.) Eurofresh and State Defendants separately moved to dismiss. (Doc. ##20, 27.) The Court granted the motions and dismissed the Complaint with leave to file an amended complaint that cured the deficiencies identified in the Order.[1] (Doc. #38.)

On April 28, 2010, Plaintiff filed his First Amended Complaint. (Doc. #51.) The

---

[1]The Court dismissed the ADA Title I claims against all Defendants with prejudice. (Doc. #38 at 21.)

Court will dismiss the First Amended Complaint for failure to state a claim and give Plaintiff one final opportunity to file an amended complaint that cures the deficiencies.

Plaintiff also filed a Notice of Appeal from the Court's Order dismissing the Complaint with leave to amend, and he filed a Motion for Leave to Appeal *in forma pauperis*. (Doc. #45.) The Court will deny the Motion.

## I.    Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. Id. at 1951.

///

## II.     First Amended Complaint

In his First Amended Complaint, Plaintiff sues the following Defendants: Eurofresh, Inc., the ADC, and the State of Arizona.  He asserts generally that he is a disabled veteran and that State Defendants contracted out his labor to Eurofresh on July 27, 2008.  (Doc. #51 at 3.)   On or about October 15, 2008 and November 10, 2008, Plaintiff requested a reasonable accommodation for his disability, stating that he could not walk for extended periods of time.  The requests were denied.  (Id.)

The First Amended Complaint raises six Counts as follows:

Count I: Defendants violated Title I of the ADA when they denied Plaintiff reasonable accommodation for his disability;

Count II: State Defendants violated Title II of the ADA when they denied Plaintiff access to the Arizona Correctional Industries (ACI) program;

Count III: Defendants' actions violated § 504 of the RA of 1973;

Count IV: Defendants' actions violated the Arizona Civil Rights Act (ACRA);

Count V:  Eurofresh violated its contract with State Defendants by failing to comply with the ADA and federal and state employment laws; and

Count VI: Defendants' conduct constituted the intentional infliction of emotional distress.  (Doc. #51.[2])

Plaintiff claims federal jurisdiction under 28 U.S.C. §§ 1331, 1332, and 1337[3].  He seeks $30,000 in lost wages, $100,000 in nominal and compensatory damages, and $300,000 in punitive damages, as well as injunctive relief.  (Id. at 6.)

## III.     Failure to State a Claim

### A.     Count I—ADA Title I

In Count I, Plaintiff asserts that ACI is a program conducted for the employment of

---

[2]All claims are the same as those raised in the original Complaint.  (Doc. #1.)

[3]28 U.S.C. § 1337 gives district courts original jurisdiction of a civil action arising under an Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.  28 U.S.C. § 1337(a).

prisoners. (Doc. #51 ¶ 1, citing Ariz. Rev. Stat. § 14-1621(1); § 14-1622(b)). He contends that he was employed by Eurofresh through ACI, which was administered and operated by State Defendants. (Id. ¶¶ 7-8.) Title I of the ADA prohibits the States and other employers from "discriminat[ing] against a qualified individual with a disability because of th[at] disability . . . in regard to . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The Court has previously held that, as a matter of law, Plaintiff was not an employee for purposes of protection under Title I of the ADA. (Doc. #38 at 8, 11.) In addition, the Court notes that State Defendants have Eleventh Amendment immunity as to the Title I claims. (Id. at 16.) These claims are, again, dismissed with prejudice. (Id.)

## B.    Count II —ADA Title II

To state a claim under Title II of the ADA, a plaintiff must show: (1) he is a "qualified individual with a disability"; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. 42 U.S.C. § 12132. A disability within the meaning of the statute is a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102.

And "[t]o recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant." Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). To establish intentional discrimination under the ADA, the plaintiff must show defendants acted with "deliberate indifference." Id. (emphasis added). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1139.

In Count II, Plaintiff asserts that State Defendants denied him access to the ACI program. Plaintiff asserts that he cannot walk for extended periods of time due to an injury sustained in a parachute jump. (Doc. #51 ¶ 3.) He claims that Defendants have a record of his injuries and impairments. (Id. ¶ 4.) He asserts that he was an otherwise qualified

individual and qualified to access the ACI program, which he claims confers benefits to qualified state prisoners, such as payment of wages six times that of prison jobs available outside the ACI program, bonuses, and job skills not available in prison jobs outside ACI. (Id. ¶¶ 18-20.) On November 10, 2008, State Defendants denied him access to ACI because of his disability. (Id. ¶ 19.) He claims they engaged in unlawful practices, including but not limited to denying him

> —'an individual with a disability who, with or without reasonable modifications to rules, policies, or practices; the removal of architectural, communication, or transportation barriers; or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by Defendants ADCO and the State'—access to the ACI program.

(Id. ¶ 23, quoting 42 U.S.C. §12131(2).) He asserts that Defendants acted intentionally. (Id. ¶ 28.)

Plaintiff fails to state a claim. Plaintiff does not describe the work he was doing for Eurofresh, the accommodations that he sought, how he could have worked with or without accommodations, or what Defendants' specific responses were. Plaintiff's allegations regarding failure to provide modifications are nothing more than legal conclusions; in fact, he has simply quoted 42 U.S.C. §12131(2). This is insufficient. See Iqbal, 129 S. Ct. at 1949. Count II will be dismissed.

### C.     Count III—Rehabilitation Act

"The Rehabilitation Act is materially identical to and the model for the ADA, except that it is limited to programs that receive federal financial assistance . . . ." Armstrong v. Davis, 275 F.3d 849, 862 n. 17 (9th Cir. 2001) (internal quotations omitted). Title II of the ADA was expressly modeled after § 504 of the RA. Zuckle v. Regents of the Univ. of Cal., 166 F.3d 1041, 1045 n. 11 (9th Cir. 1999) ("there is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act"). To state a claim under the Rehabilitation Act, a plaintiff must allege "(1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." Duvall, 260 F.3d at 1135.

Plaintiff asserts that State Defendants receive direct federal financial assistance and that Eurofresh receives benefits indirectly "by pass-through federal assistance." (Doc. #51 ¶¶ 30, 31, 32.)

Plaintiff fails to state claims against either State Defendants or Eurofresh. The claims against Defendants fail for the same reasons as those under Title II of the ADA fail in Count II—the allegations are mere legal conclusions. In addition, the RA claim against Eurofresh is dependent on the allegation that it receives an indirect financial benefit by "pass-through." This is too vague and conclusory, as well as implausible, to pass muster under Iqbal, 129 S. Ct. at 1949, 1951. Count III will be dismissed.

### D.    Count IV—Arizona Civil Rights Act

The state ACRA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases, leases to others or operates a place of public accommodation." Ariz. Rev. Stat. § 41-1492.02(A). A public accommodation is defined to include, among other things, places of lodging, restaurants and bars, theaters, stadiums, concert and lecture halls, auditoriums, convention centers, museums, libraries, public transportation stations, retail establishments, service establishments, social service establishments, places of recreation and schools. Nolan v. Starlight Pines Homeowners Ass'n, 167 P.3d 1277, 1280 (Ariz. 2007), citing Ariz. Rev. Stat. § 41-1492(9)(a)-(l). A disability within the meaning of the statute is a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." Ariz. Rev. Stat. § 41-1492(5).

Plaintiff asserts that Eurofresh's facility is a public place in that "it is open indiscriminately to other members of the general public, is a retail and wholesale enterprise, and provides tours to the general public." (Doc. #51 ¶ 39.) He also asserts that as a result of Defendants' failure to provide him with a reasonable accommodation, he "suffered a serious physical injury, an injury that prolonged his impairment of health and aggravated his disability. Plaintiff is now unable to work at all." (Id. ¶ 40.)

For purposes of screening the First Amended Complaint, the Court must accept as true Plaintiff's factual assertions. But as with his claim of discrimination under Title II of the ADA, Plaintiff does not describe the work he was doing for Eurofresh, the accommodations that he sought, how he could have worked with or without accommodations, or what Defendants' specific responses were. Plaintiff's allegations regarding failure to provide modifications are nothing more than legal conclusions. <u>See</u> Ariz. Rev. Stat. § 41-1492.02(F)(2).

Likewise, Plaintiff's claim that he suffered a serious physical injury is merely a conclusion; Plaintiff does not specify what the injury was or why he is no longer able to work. This is insufficient to meet the requirement of Ariz. Rev. Stat. § 31-201.01(L), which strictly limits the state-law causes of action that prison inmates may assert against the government and government employees:

> A person who is convicted of a felony offense and who is incarcerated while awaiting sentence or while serving a sentence imposed by a court of law may not bring a cause of action seeking damages or equitable relief from the state or its political subdivisions, agencies, officers or employees for injuries suffered while in the custody of the state or its political subdivisions or agencies unless the complaint alleges specific facts from which the court may conclude that the plaintiff suffered serious physical injury or the claim is authorized by a federal statute.

Ariz. Rev. Stat. § 31-201.01(L). A "serious physical injury" is "an impairment of physical condition that creates a substantial risk of death or that causes serious disfigurement, prolonged impairment of health or prolonged loss or impairment of the function of any bodily organ." Ariz. Rev. Stat. § 31-201.01(N)(2). Moreover, Plaintiff fails to explain how State Defendants are connected to the harm alleged under the ACRA. <u>See</u> Ariz. Rev. Stat. § 41-1492.02(A).

The Court will dismiss Count IV.

**E.    Count V—Breach of Contract**

Plaintiff asserts that Eurofresh and State Defendants entered into a contract for prison labor and under the terms of the contract, Defendants promised to comply with the ADA and federal and state employment laws. (Doc. #51 ¶¶ 44-45.) He alleges that on November 10, 2008, Eurofresh violated the contract by discriminating against Plaintiff and that he suffered

damages in the form of lost wages and future pay.  (Id. ¶¶ 46-47.)

Because the Court will dismiss the federal and state employment claims against Eurofresh, the breach of contract claim will also be dismissed.

### F.    Count VI—Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, a plaintiff must plead sufficient facts showing that: (1) the conduct by the defendant is "extreme" and "outrageous"; (2) the defendant either intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from his conduct; and (3), severe emotional distress occurred as a result of defendant's conduct. Citizen Publishing Co. v. Miller, 115 P.3d 107, 110 (Ariz. 2005).  "Only when reasonable minds could differ in determining whether conduct is sufficiently extreme or outrageous does the issue go to the jury." Mintz v. Bell Atlantic Sys. Leasing Intern., Inc., 905 P.2d 559, 563 (Ariz. App. 1995). A plaintiff must plead facts that show "the defendant's conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  Johnson v. McDonald, 3 P.3d 1075, 1080-81 (Ariz. App. 1999) (dismissing claim for intentional infliction of emotional distress where plaintiff failed to plead any conduct "so outrageous that it goes beyond all bounds of decency").

In Count VI, Plaintiff alleges Defendants' conduct was extreme and outrageous when they forced him to continue working, under threat of termination and derogatory performance evaluations to ADC.  (Doc. #51 ¶ 49.)   He asserts they disregarded the "wear" that such distress would cause and that he has suffered emotional distress, including insomnia, anxiety, and night terrors.  (Id. ¶ 51.)   This aggravated his physical impairment and resulted in serious physical injury within the meaning of Ariz. Rev. Stat. § 31-201.01(N)(2) and physical injury within the meaning of 42 U.S.C. § 1997e(e).

As previously noted by this Court, there is an extremely high burden for intentional-infliction-of-emotional-distress claims in Arizona.  Bodett v. CoxCom, Inc., 366 F.3d 736, 747 (9th Cir. 2004).  In Bodett, the Ninth Circuit noted that Arizona courts have typically

found false accusations alone not enough to constitute an intentional infliction of emotional distress. Id. at 747-48, citing, e.g., Duhammel v. Star, 133 Ariz. 558, 653 P.2d 15 (Ariz. App.1982) (false accusations against police officer made to city council and newspaper reporters are not outrageous conduct justifying claim for emotional distress).

The Court finds that these allegations in Count VI fall far short of a claim for intentional infliction of emotional distress. The Court will dismiss Count VI.

**IV.    Leave to Amend**

For the foregoing reasons, Plaintiff's First Amended Complaint will be dismissed for failure to state a claim upon which relief may be granted. Within 30 days, Plaintiff may submit a second amended complaint to cure the deficiencies outlined above. The Clerk of Court will mail Plaintiff a court-approved form to use for filing a second amended complaint. If Plaintiff fails to use the court-approved form, the Court may strike the second amended complaint and dismiss this action without further notice to Plaintiff.

Plaintiff must clearly designate on the face of the document that it is the "Second Amended Complaint." The second amended complaint must be retyped or rewritten in its entirety on the court-approved form and may not incorporate any part of the original Complaint or First Amended Complaint by reference. Plaintiff may include only one claim per count.

A second amended complaint supersedes the original Complaint and First Amended Complaint. Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992); Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1546 (9th Cir. 1990). After amendment, the Court will treat the original Complaint and First Amended Complaint as nonexistent. Ferdik, 963 F.2d at 1262. Any cause of action that was raised in the original Complaint or First Amended complaint is waived if it is not raised in a second amended complaint. King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).

**V.    Warnings**

**A.    Release**

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release.

Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay the balance or (2) show good cause, in writing, why he cannot. Failure to comply may result in dismissal of this action.

**B.    Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

**C.    Copies**

Plaintiff must submit an additional copy of every filing for use by the Court. <u>See</u> LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

**D.    Possible "Strike"**

Because the First Amended Complaint has been dismissed for failure to state a claim, if Plaintiff fails to file a second amended complaint correcting the deficiencies identified in this Order, the dismissal may count as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g). Under the 3-strikes provision, a prisoner may not bring a civil action or appeal a civil judgment *in forma pauperis* under 28 U.S.C. § 1915 "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

**E.    Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. <u>See</u> <u>Ferdik</u>, 963 F.2d at 1260-61 (a district court may dismiss an action for failure to comply with any order of the Court).

/ / /

## VI.  Motion for Leave to Appeal *in forma pauperis*

As noted, Plaintiff has filed a Notice of Appeal, appealing this Court's March 8, 2010 Order dismissing the original Complaint, and he filed a Motion for Leave to Appeal *in forma pauperis*. (Doc. #45.)  Because Plaintiff paid the filing fee for this action, the Court did not determine his application to proceed *in forma pauperis*. (Doc. ##6, 11.)  Therefore, the provisions of Federal Rule of Appellate Procedure 24(a)(3) do not apply to Plaintiff.  Under Rule 24(a)(1), Plaintiff must seek permission from the district court to proceed *in forma pauperis*.

This Court has previously noted that the March 8 Order is not an appealable Order. (Doc. #50 at 2.)  Thus, an appeal from the Order is not taken in good faith, and the Court will deny the Motion.

**IT IS ORDERED**:

(1) The reference to the Magistrate Judge is withdrawn as to Plaintiff's First Amended Complaint (Doc. #51) and Plaintiff's Motion for Leave to Appeal *in forma pauperis* (Doc. #45).

(2)  The First Amended Complaint (Doc. #51) is **dismissed** for failure to state a claim. Plaintiff has **30 days** from the date of this Order is to file a second amended complaint in compliance with this Order.

(3)  If Plaintiff fails to file a second amended complaint within 30 days, the Clerk of Court must, without further notice, enter a judgment of dismissal of this action with prejudice that states that the dismissal may count as a "strike" under 28 U.S.C. § 1915(g).

(4)  **If Plaintiff files a second amended complaint within 30 days, the Court will issue a screening order pursuant to 28 U.S.C. § 1915A; Defendants must NOT answer the Second Amended Complaint or otherwise respond by appropriate motion pursuant to Rule 12(a) of the Federal Rules of Civil Procedure until after the Court issues its screening order.**

(5)  The Clerk of Court must mail Plaintiff a court-approved form for filing a civil rights complaint by a prisoner.

(6)   Plaintiff's Motion for Leave to Appeal *in forma pauperis* (Doc. #45) is **denied.**

DATED this 17th day of May, 2010.

Mary H. Murguia
United States District Judge