WO                                                                    SVK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William W. Castle, | No. CV 09-8114-PCT-MHM (DKD) |
| Plaintiff, | **ORDER** |
| vs. | |
| Eurofresh, Inc., et al., | |
| Defendants. | |

On June 30, 2009, Plaintiff, who is confined in the Arizona State Prison Complex-Meadows in Florence, Arizona, filed a *pro se* civil rights Complaint; he paid the filing fee on August 3, 2009. (Doc. 1, 6.) Plaintiff's Complaint raised multiple claims, including claims under the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA) against Eurofresh Farms, Inc. (Eurofresh) and various State Defendants—the State of Arizona, the Arizona Department of Corrections (ADC), Dora Schriro, former Director of ADC, and Charles Ryan, current Director of ADC (State Defendants). (Doc. 1.) Eurofresh and State Defendants separately moved to dismiss. (Docs. 20, 27.) The Court granted the motions and dismissed the Complaint with leave to file an amended complaint that cured the deficiencies identified in the Order.[1] (Doc. 38.)

---

[1] The Court dismissed the ADA Title I claims against all Defendants with prejudice. (Doc. 38 at 21.)

On April 28, 2010, Plaintiff filed his First Amended Complaint. (Doc. 51.) The Court dismissed the it for failure to state a claim and gave Plaintiff one final opportunity to file an amended complaint that cures the deficiencies. (Doc. 52.)

Plaintiff has filed a Second Amended Complaint, with almost 100 pages of attachments. (Doc. 58.) The Court will direct State Defendants to answer Counts II and III and dismiss the remaining Counts and Defendant.

## I. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. Id. at 1951.

**II.     Second Amended Complaint**

In his Second Amended Complaint, Plaintiff sues the following Defendants: Eurofresh, Inc., the ADC, Dora Schriro, Charles Ryan, and the State of Arizona.[2]  Plaintiff asserts generally that he is a disabled veteran, who is unable to walk for extended periods of time. (Doc. 58 at 3 and ¶14.)  On July 27, 2008, State Defendants contracted out his labor to Eurofresh, which Plaintiff describes as a private, for-profit corporation. (Id. at 3, and ¶¶ 1, 5.)  This was done through the Arizona Correctional Industries (ACI) Program, which is a program pursuant to Ariz. Rev. Stat. § 41-1622(B). (Id. at 3, and ¶ 1.)  He alleges that Defendants were his employers within the meaning and scope of Title I of the ADA and were federally funded public entities under Title II of the ADA and the RA. (Id. ¶ 1.)  On or about October 15, 2008 and November 10, 2008, Plaintiff requested a reasonable accommodation for his disability, stating that he could not walk for extended periods of time. The requests were denied and Plaintiff was constructively discharged. (Id. at 3.)

The Second Amended Complaint raises five Counts as follows:

Count I: All Defendants violated Title I of the ADA when they denied Plaintiff reasonable accommodation for his disability;

Count II: All Defendants violated Title II of the ADA when they denied Plaintiff access to the ACI Program;

Count III: All Defendants violated § 504 of the RA of 1973;

Count IV: Eurofresh's actions violated the Arizona Civil Rights Act (ACRA); and

Count V: Eurofresh violated its contract with State Defendants by failing to comply with the ADA and federal and state employment laws.

Plaintiff claims federal jurisdiction under 28 U.S.C. §§ 451, 1331, 1332, and 1337.[3]

---

[2] Plaintiff sues Schriro and Ryan in their individual and official capacities. (Doc. 58 at 12.)

[3] 28 U.S.C. § 1337 gives district courts original jurisdiction of a civil action arising under an Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies. 28 U.S.C. § 1337(a). 28 U.S.C. § 451 contains definitions for Title 28 and is not a jurisdictional statute.

He seeks $30,000 in lost wages, $100,000 in nominal and compensatory damages, and $300,000 in punitive damages, as well as declaratory and injunctive relief. (Id. at 8.)

**III.    Analysis**

  **A. Count I—ADA Title I**

In Count I, Plaintiff asserts that Eurofresh and the State Defendants were covered entities under the ADA and that Eurofresh "was by virtue of contract, part of the ACI program." (Doc. 58 ¶ 18.) Plaintiff asserts that at all relevant times he was an employee within the meaning of Title I and exempt from Arizona's "hard labor" requirement because of his disability. (Id. ¶ 19.)

Plaintiff performed tomato picking at Eurofresh; he asserts that he was a qualified individual with a disability, walking was not an essential function of his job, and that he was able to pick tomatoes with or without accommodations. (Id. ¶ 22.) He asserts that he requested a reasonable accommodation for his disability; specifically, he requested "use of an electronic trolley, be allowed additional periodic rest breaks, and/or transfer to a position that does not require walking for long periods of time." (Id. ¶ 23.)

Title I of the ADA prohibits the States and other employers from "discriminat[ing] against a qualified individual with a disability because of th[at] disability . . . in regard to . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The Court has previously held that, as a matter of law, Plaintiff was not an employee for purposes of protection under Title I of the ADA. (Doc. 38 at 8, 11.) In addition, the Court notes that State Defendants have Eleventh Amendment immunity as to the Title I claims. (Id. at 16, see Bd. of Trustees of the Univ. of Alabama, et al. v. Garrett, et al., 531 U.S. 356, 374 (2001).)

These claims are, again, dismissed with prejudice as to all Defendants.

  **B. Count II —ADA Title II**

To state a claim under Title II of the ADA, a plaintiff must show: (1) he is a "qualified individual with a disability"; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was

by reason of his disability. 42 U.S.C. § 12132. A disability within the meaning of the statute is a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102. And "[t]o recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant." Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). To establish intentional discrimination under the ADA, the plaintiff must show defendants acted with "deliberate indifference." Id. (emphasis added). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1139.

In Count II, Plaintiff asserts that the ACI program offers particular benefits to state prisoners such as six times the wages paid for prison jobs outside the program, bonuses, and job skills not otherwise available. (Doc. 58 ¶ 35.) He asserts that because of his disability, he was denied access to the ACI program and the ability to obtain the benefits, in violation of the Equal Protection Clause of the Fourteenth Amendment. (Id. ¶¶ 37, 41.) He alleges that Defendants intentionally discriminated against him by denying and ignoring his requests for accommodations. (Id. ¶ 42.)

Plaintiff also alleges that by virtue of the contract, Eurofresh and its Snowflake facility were "integral parts of the ACI program. Eurofresh is part of the ACI Program in accordance with the entity theory of partnership. . . . Eurofresh was an instrumentality of the State of Arizona." (Id. ¶ 33, ref. Ex. 5, Inmate Work Contract.)

Plaintiff has stated a claim against State Defendants for violation of Title II of the ADA. The Court notes that claims against State Defendants may be barred by the Eleventh Amendment. See United States v. Georgia, 546 U.S. 151, 154 (2006). In addition, it is not clear that a Defendant can be liable in his or her individual capacity because it is not clear that the language of Title II, which as noted below refers specifically to "public entities," applies to individuals.

The Court holds that Plaintiff fails to state a claim against Eurofresh under Title II of the ADA. ADA Title II applies to public entities, which are defined as

        (A) any State or local government;
        (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and
        (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49).

42 U.S.C. § 12131(1).

Plaintiff alleges that Eurofresh is an instrumentality of the state, but he also asserts that Eurofresh is a private, not-for-profit corporation.

First, the allegation that Eurofresh is an instrumentality of the state is nothing but a vague and implausible legal conclusion. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). In addition, courts that have considered the issue have consistently found that contractual relationships between private and government entities are not sufficient to render the private entities instrumentalities liable under Title II. In Green v. City of New York, 465 F.3d 65, 79 (2nd Cir. 2006), the Second Circuit held that a private hospital was not an "instrumentality" of a local government and that "instrumentality" as used in Title II of the ADA meant that the entity "must somehow belong to the government or have been created by it." Specifically, the court found that a private hospital performing services under a contract with a municipality, even if it did so according to the municipality's rules and under its direction, was not "a creature of any governmental entity. Instead it is a parallel private entity." Id. More recently, the Eleventh Circuit held that a private prison management corporation that contracted to provide prison management services to Florida was not a public entity within the meaning of Title II and that "'instrumentality of a State' refers to governmental units or units created by them." Edison v. Douberly, 604 F.3d 1307, 1310 (11th Cir. 2010); see Falchenberg v. New York State Dept. of Educ., 642 F. Supp. 2d 156, 165 (S.D.N.Y. 2008) (holding that the private testing company contracted by state defendants to administer accreditation tests was not subject to suit under Title II of the ADA); Schiavo ex rel Schindler v. Schiavo, 358 F. Supp. 2d 1161, 1165 (M.D. Fla. 2005) (hospice was not a public entity even though it received federal funding).

The Court finds that Eurofresh is not a public entity and, therefore, it is not subject to Title II. The Court also notes that the contract specifically provides "that this Contract does

not create a partnership between the parties and that each party shall remain a distinct legal entity." (Doc. 58, Ex. 5 §3.21.)

Eurofresh is dismissed from Count II.

### C. Count III—Rehabilitation Act

"The Rehabilitation Act is materially identical to and the model for the ADA, except that it is limited to programs that receive federal financial assistance. . . ." Armstrong v. Davis, 275 F.3d 849, 862 n. 17 (9th Cir. 2001) (internal quotations omitted). Title II of the ADA was expressly modeled after § 504 of the RA. Zukle v. Regents of the Univ. of Cal., 166 F.3d 1041, 1045 n. 11 (9th Cir. 1999) ("there is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act"). To state a claim under the Rehabilitation Act, a plaintiff must allege "(1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." Duvall, 260 F.3d at 1135.

Plaintiff asserts that State Defendants receive direct federal financial assistance and that Eurofresh as a contract partner of the ACI Program received indirect federal assistance. (Doc. 58 ¶¶ 44, 45.) He alleges that because of the contractual partnership with ADC, Eurofresh obtained "a competitive advantage with respect to other produce and agricultural companies because Plaintiff was paid $2.25 per hour in contrast to the prevailing wage of $10.00 per hour or more to union non-prisoner workers." (Id. ¶ 45.) He also asserts that Eurofresh does not have to pay Social Security or Medicare taxes in the ACI Program. (Id.)

Because Plaintiff asserts that State Defendants receive federal financial assistance and Plaintiff has stated a claim under ADA Title II, he states a claim against State Defendants under the RA. But the RA claim against Eurofresh is dependent on the allegation that it receives an indirect financial benefit from paying lower wages that results in a competitive advantage. This is too vague and conclusory, as well as implausible, to pass muster under Iqbal, 129 S. Ct. at 1949, 1951. The Court has already held that because ACI must pay Social Security and medicare taxes there is no indirect financial assistance to Eurofresh in

this regard. (Doc. 38 at 9.) Count III will be dismissed as to Eurofresh.

**D.     Count IV—Arizona Civil Rights Act**

The Court holds that Plaintiff fails to state a claim against Eurofresh for violations of the ACRA.

The allegations in Count IV are very confusing. Plaintiff asserts that the Eurofresh facility is a public place in that "it is open indiscriminately to other members of the general public, is a retail and wholesale enterprise, and provides tours to the general public." (Doc. 58 ¶ 50.) He contends that "Eurofresh and the Snowflake facility were integral parts of the ACI Program, a federally funded public program, thereby, in relationship with the State Defendants, is a public accommodation and/or public place." (Id. ¶ 51.) He also asserts that Eurofresh discriminated against him on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of facility in Snowflake, Arizona, by virtue of contract and otherwise a public accommodation and denying Plaintiff the opportunity to participate in or benefit from the ACI Program and/or goods, services, facilities, privileges, advantages or accommodations." (Id. ¶ 52.)

The ACRA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases, leases to others or operates a place of public accommodation." Ariz. Rev. Stat. § 41-1492.02(A). The law further provides that:

> B. It is discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of that individual or class, directly or through contractual, licensing or other arrangements:
>
> 1. To a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, advantages, privileges or accommodations of an entity.
>
> 2. To the loss of an opportunity to participate in or benefit from goods, services, facilities, privileges, advantages or accommodations that are not equal to that afforded to other individuals.
>
> 3. To a good, service, facility, privilege, advantage or accommodation that is different or separate from that provided to other individuals, unless the action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, accommodation or other opportunity that

> is as effective as that provided to others. For purposes of this subsection, "individual" or "individuals" refers to the clients or customers of the covered public accommodation that enters into the contractual, licensing or other arrangement.

Id. at § 41-1492.02(B).

A public accommodation is defined to include, among other things, places of lodging, restaurants and bars, theaters, stadiums, concert and lecture halls, auditoriums, convention centers, museums, libraries, public transportation stations, retail establishments, service establishments, social service establishments, places of recreation and schools. Nolan v. Starlight Pines Homeowners Ass'n, 167 P.3d 1277, 1280 (Ariz. 2007) ( citing Ariz. Rev. Stat. § 41- 1492(9)(a)-(l)). A disability within the meaning of the statute is a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." Ariz. Rev. Stat. § 41-1492(5).

The ACRA is intended to be consistent with the ADA. Laws 1992, Ch. 224, § 1C. Title III of the ADA provides as follows:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). Neither the ACRA nor Title III of the ADA defines "goods, services, facilities, privileges, advantages, or accommodations."

For purposes of screening the Second Amended Complaint, the Court must accept as true Plaintiff's *factual* assertions regarding Snowflake as a public accommodation. Specifically, Plaintiff alleges that it is a retail establishment. But Plaintiff's allegation that Eurofresh is an "integral part of the ACI Program" is vague and conclusory.

Moreover, it is beyond dispute that ADC and its prison facilities and programs are not places of public accommodation. That ADC receives federal funds does not mean that the ACI program is a public accommodation. The legislative history of the ACI Program states that

> The purposes of correctional industries established pursuant to § 41-1622, Arizona Revised Statutes, are to:

>    1. Make available within the state correctional institutions opportunities for employment of inmates in jobs which combat idleness or develop good working habits. . . .

Laws 1978, Ch. 164, § 29, effective October 1, 1978. Plainly, ACI is restricted to inmate labor, is not open to the public, and is not a public accommodation. The Court finds that Eurofresh is not a place of public accommodation by virtue of any relationship with ACI, and, to the extent that Plaintiff alleges that he was denied the "goods, services, facilities, privileges, advantages and accommodations" of ACI, Plaintiff does not state a claim under the ACRA.

But it also appears that Plaintiff may be alleging that he was denied the "goods, services, facilities, privileges, advantages and accommodations" of the Eurofresh Snowflake facility. First, Plaintiff does not specify what "goods, services, facilities, privileges, advantages and accommodations" of Eurofresh he was denied; he merely recites the language of the statute. But more important, the Court finds that, even if Eurofresh is a place of public accommodation, Plaintiff does not state a claim against Eurofresh because Plaintiff was not denied any "goods, services, facilities, privileges, advantages and accommodations" offered by Eurofresh to the public.

In PGA Tour, Inc. v. Martin, 532 U.S. 661, 679 (2001), the Supreme Court left open the question whether Title III of the ADA applies only to clients and customers of a public accommodation. The Court did not need to reach the issue because it held that Martin was a client or customer because he had paid a $3000 fee to compete in qualifying events and, if successful, in subsequent tour events. The Court reasoned that the defendant's tournaments simultaneously offered at least two privileges to the public—the privilege of watching and the privilege of competing in the golf competition. Id. at 680. Justices Scalia and Thomas dissented on the ground that the judgment "distorts the text of Title III, the structure of the ADA, and common sense." Id. at 691 (Scalia J., dissenting). They concluded, *inter alia*, that Title III covers only clients and customers of public accommodations. Id. 693.

Since <u>PGA Tour</u>, at least one court has held that Title III protections are not limited to the clients or customers of a public accommodation. <u>Hetz v. Aurora Medical Ctr. of Manitoc County</u>, 2007 WL 1753428 (E.D. Wis.). In <u>Hetz</u>, the district court held that a doctor seeking staff privileges at the defendant hospital was covered by Title III, "irregardless of whether such individual could be considered a client or a customer of the place of public accommodation." <u>Id.</u> at 11. The court also held that the plaintiff could be properly considered a "client or customer." <u>Id.</u> The court found that the hospital's offer of staff privileges fit within the coverage of Title III, citing <u>Martin</u>, 532 U.S. at 677 ("It seems apparent, from both the general rule and the comprehensive definition of 'public accommodation,' that petitioner's golf tours and their qualifying rounds fit comfortably within the coverage of Title III, and <u>Martin</u> within its protection.") <u>Hetz</u>, 2007 WL 1753428, at 11. But the court also noted that its holding did not mean that all independent contractors are necessarily also covered under Title III. <u>Id.</u> at 12. "Unlike in other independent contractor relationships, the hospital is in essence simply offering its facility as a place of practice for an independent doctor. The hospital does not pay the physician, who bills his own patients and collects fees from them directly. . . . In contrast, an individual who is hired and paid to perform services primarily for the benefit of the place of public accommodation may very well not fall under the protections of Title III." <u>Id.</u>

Without deciding whether Title III, and therefore the ACRA, protects only customers or clients of a public accommodation, the Court finds that Plaintiff, nevertheless, does not state a claim. The Supreme Court found in <u>Martin</u> that the defendant offered at least two privileges *to the public*, including the privilege of competing in the golf tournament, which is what that plaintiff was prevented from doing. In contrast, Plaintiff here alleges that he lost his inmate job picking tomatoes. But picking tomatoes is not among the "goods, services, facilities, advantages, privileges or accommodations" offered by Eurofresh *to the public*. In other words, not only is Plaintiff not a client or customer of Eurofresh or its Snowflake facility, but the privilege he allegedly lost is not covered under the statute. Therefore, Plaintiff does not and cannot allege on these facts that he was denied the opportunity "to

- 11 -

participate in or benefit from the "goods, services, facilities, advantages, privileges or accommodations" of Eurofresh within the meaning of the ACRA.

The Court will dismiss Count IV.

### E.     Count V—Breach of Contract

Plaintiff asserts that Eurofresh and State Defendants entered into a contract for prison labor and, under the terms of the contract, Defendants promised to comply with the ADA and federal and state employment laws. (Doc. 58 ¶¶ 54, 56.)  He alleges that on November 28, 2008, Eurofresh violated the contract by discriminating against Plaintiff on the basis of his disability and that he suffered damages in the form of lost wages and future pay. (Id. ¶ 57.)

Because the Court will dismiss the federal and state claims against Eurofresh, the breach of contract claim will also be dismissed.  In addition, Plaintiff fails to allege the elements necessary to recover as a third party beneficiary. See Norton v. First Fed. Sav., 624 P.2d 854, 856 (Ariz. 1981) ((1) the contract must indicate an intention to benefit the third party beneficiary, (2) the contemplated benefit must be both intentional and direct, and (3) it must be clear that the parties intended to recognize the third party as the primary party in interest).

## IV.    Conclusion

Count I will be dismissed with prejudice as to all Defendants.  All claims against Eurofresh will be dismissed.  State Defendants are directed to answer Counts II and III.  Defendants have already been served. (Doc. 15-18.)

## V.     Warnings

### A.     Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

### B.     Copies

Plaintiff must submit an additional copy of every filing for use by the Court. See LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

**C.     Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. See Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61(9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED**:

(1)  The reference to the Magistrate Judge is withdrawn as to Plaintiff's Second Amended Complaint (Doc. 58).

(2)  Count I of the Second Amended Complaint is dismissed with prejudice; Counts IV and V are dismissed; and Eurofresh is dismissed as a Defendant.

(3)  State Defendants must answer Counts II and III.

(4)  Defendants must answer the Second Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(5)  Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

DATED this 10th day of August, 2010.

_____
Mary H. Murguia
United States District Judge

- 13 -