**WO**                                                                                        SVK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William W. Castle, | No. CV 09-8114-PCT-MHM (DKD) |
| Plaintiff, | **ORDER** |
| vs. | |
| Eurofresh, Inc., et al., | |
| Defendants. | |

Plaintiff William W. Castle filed this civil rights action alleging violations of the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA), as well as various state-law claims, against Eurofresh Farms, Inc. (Eurofresh); the State of Arizona; the Arizona Department of Corrections (ADC); Dora Schriro, former Director of ADC; and Charles Ryan, current Director of ADC (State Defendants).[1] The remaining Defendants—the State of Arizona, ADC, Schriro, and Ryan—move to dismiss the Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 70.) The motion is fully briefed. (Docs. 72, 78.)

The Court will grant the motion in part and deny it in part.

**I.  Background**

In his Second Amended Complaint, Plaintiff asserted generally that he is a disabled

---

[1] Plaintiff sues Schriro and Ryan in their individual and official capacities. (Doc. 58 at 12.)

veteran, who is unable to walk for extended periods of time. (Doc. 58 at 3 and ¶14.) On July 27, 2008, State Defendants contracted out his labor to Eurofresh, which Plaintiff described as a private, for-profit corporation. (Id. at 3, and ¶¶ 1, 5.) This was done through the Arizona Correctional Industries (ACI) Program, which is a program pursuant to Ariz. Rev. Stat. § 41-1622(B). (Id. at 3, and ¶ 1.) He alleged that Defendants were his employers within the meaning and scope of Title I of the ADA and were federally funded public entities under Title II of the ADA and the RA. (Id. ¶ 1.) On or about October 15, 2008 and November 10, 2008, Plaintiff requested a reasonable accommodation for his disability, stating that he could not walk for extended periods of time. The requests were denied, and Plaintiff was constructively discharged. (Id. at 3.)

The Second Amended Complaint raised five Counts as follows:

Count I: All Defendants violated Title I of the ADA when they denied Plaintiff reasonable accommodation for his disability;

Count II: All Defendants violated Title II of the ADA when they denied Plaintiff access to the ACI Program;

Count III: All Defendants violated § 504 of the RA of 1973;

Count IV: Eurofresh's actions violated the Arizona Civil Rights Act (ACRA); and

Count V: Eurofresh violated its contract with State Defendants by failing to comply with the ADA and federal and state employment laws.

The Court screened the Second Amended Complaint pursuant to 28 U.S.C. § 1915A(a) and dismissed Counts I, IV, and V, and all claims against Eurofresh. (Doc. 61.) The Court directed the State Defendants to answer or otherwise respond to Counts II and III. (Id.)

Defendants now move to dismiss on the grounds that (1) the individual Defendants are not proper parties; (2) Plaintiff is not a qualified individual under the ADA or RA; and (3) Plaintiff cannot show intentional discrimination because he has no federally protected right. (Doc. 70.)

///

**II.    Motion to Dismiss**

    **A.    Preliminary Matters**

In his response to the Motion to Dismiss, Plaintiff asserts that the Court has already screened Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A(a) and found that it met the pleading threshold of Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and directed Defendants to answer the Complaint.

As noted in the Order granting the first Motions to Dismiss made by Eurofresh and State Defendants, a Rule 12(b)(6) motion is appropriate where, as here, the claims are complex and the moving papers assist the court in evaluating the applicable authorities. (Doc. 38 at 2-3.) See also 42 U.S.C. § 1997e ("The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action . . . fails to state a claim upon which relief can be granted. . . ."). Moreover, Plaintiff's Second Amended Complaint was 25 pages long and had over 90 pages of exhibits. The Court will consider the motion.

In addition, Plaintiff alleges that Eurofresh has been under investigation and fined for various immigration law violations but that ADC continues to do business with Euroresh. (Doc. 72 at 2.) These allegations are unsupported and irrelevant to the issues before the Court. Plaintiff's allegations of retaliation are also irrelevant as are his complaints about efforts to obtain his medical records. (Id. at 4, 5.)

    **B.    Legal Standards**

        **1.    Rule 12(b)(6)**

To state a claim, Federal Rule of Civil Procedure 8(a)(2) requires " a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his

- 3 -

1  "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation
2  of the elements of a cause of action will not suffice. Id., citing Papasan v. Allain, 478 U.S.
3  265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal
4  conclusion couched as a factual allegation"). In other words, while Rule 8 does not demand
5  detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-
6  harmed-me accusation." Iqbal, 129 S. Ct. at 1949. "Threadbare recitals of the elements of
7  a cause of action, supported by mere conclusory statements, do not suffice." Id. To survive
8  a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to
9  "state a claim to relief that is plausible on its face." Id. Dismissal may be based either on
10 the lack of cognizable legal theories or the lack of pleading sufficient facts to support
11 cognizable legal theories. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.
12 1990).

13  A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards
14 than formal pleadings drafted by lawyers.'" Hebbe v. Pliler, --- F. 3d --- , 2010 WL
15 4673711, at *3 (9th Cir. Nov. 19, 2010) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)
16 (*per curiam*)); Haines v. Kerner, 404 U.S. 519 (1972). 611 F. 3d 1201, 1205 (9th Cir. 2010).

17  Although courts will not normally look beyond the pleadings in resolving a Rule
18 12(b)(6) motion, Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001), a "court may
19 consider material that the plaintiff properly submitted as part of the complaint or, even if not
20 physically attached to the complaint, material that is not contended to be inauthentic and that
21 is necessarily relied upon by the plaintiff's complaint." Id. And a court may disregard
22 allegations of the complaint that are contradicted by attached exhibits. Steckman v. Hart
23 Brewing, Inc., 143 F.3d 1293, 1295 (9th Cir. 1998); Durning v. First Boston Corp., 815 F.2d
24 1265, 1267 (9th Cir. 1987). Furthermore, the court is not required to accept as true
25 allegations contradicted by judicially noticed facts. Mullis v. United States Bankruptcy Ct.,
26 828 F.2d 1385, 1388 (9th Cir. 1987). The court may consider matters of public record,
27 including pleadings, orders, and other papers filed with the court. Mack v. South Bay Beer
28 Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986) (abrogated on other grounds by Astoria

1  Federal Savings and Loan Ass'n v. Solimino, 501 U.S. 104 (1991)). "The court is not
2  required to accept legal conclusions cast in the form of factual allegations if those
3  conclusions cannot reasonably be drawn from the facts alleged." Clegg v. Cult Awareness
4  Network, 18 F.3d 752, 754-55 (9th Cir. 1994). Nor must the court accept unreasonable
5  inferences or unwarranted deductions of fact. Western Mining Council v. Watt, 643 F.2d
6  618, 624 (9th Cir. 1981).

### 2.   Title II of the ADA and the RA

To state a claim under Title II of the ADA, a plaintiff must show that: (1) he is a "qualified individual with a disability"; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. 42 U.S.C. § 12132. A "public entity" includes "(A) any State or local government; [and] (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. §12131(1). The term "qualified individual with a disability" means

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2). A disability within the meaning of the statute is a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102.

"The Rehabilitation Act is materially identical to and the model for the ADA, except that it is limited to programs that receive federal financial assistance. . . ." Armstrong v. Davis, 275 F.3d 849, 862 n. 17 (9th Cir. 2001) (internal quotations omitted). Title II of the ADA was expressly modeled after § 504 of the RA.[2] Zuckle v. Regents of the Univ. of Cal.,

---

[2] Specifically, 29 U.S.C. § 794 (b) provides that "'program or activity' means all of the operations of--
(1)(A) a department, agency, special purpose district, or other instrumentality of a State or

- 5 -

1  166 F.3d 1041, 1045 n. 11 (9th Cir. 1999) ("there is no significant difference in analysis of
2  the rights and obligations created by the ADA and the Rehabilitation Act").

### C. Individual Defendants

#### 1. Parties' Contentions

##### a. Defendants

Defendants argue that in the Ninth Circuit, only an employer can be liable for violation of the ADA; individuals are not liable. (Doc. 70 at 4, citing Burkhart v. Intuit, Inc., 2009 WL 528603, at *5 (D. Ariz., March 02, 2009) ("The ADA clearly does not permit claims against individual employees."); Miller v. Maxwell's Int'l, Inc., 991 F.2d 583, 587 (9th Cir. 1993); Rohm v. Homer, 367 F. Supp. 2d 1278, 1284 (N.D. Cal. 2005); Coffin v. Safeway, Inc., 323 F. Supp. 2d 997, 1002 (D. Ariz. 2004).) They further assert that because the RA is materially identical to and the model for the ADA, except that it is limited to programs that receive federal financial assistance, Plaintiff's RA claims against Schiro and Ryan are also properly dismissed. (Doc. 70 at 5, citing Armstrong v. Davis, 275 F.3d 849, 862 n. 17 (9th Cir. 2001).)

##### b. Plaintiff

Plaintiff reasserts that the Court has already held that he met the threshold pleading requirements of Iqbal and that it ruled that the individual Defendants are proper parties. (Doc. 72 at 7.)

##### c. Reply

In their reply Defendants assert that a "public entity" is defined as (A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government. (Doc. 78 at 10, citing 42 U.S.C. §

---

of a local government; or (B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government. . . ."

- 6 -

1  12131(1).)  They contend that the term does not include individuals.  (Id., citing Roundtree
2  v. Adams, 2005 WL 3284405, *8 (E.D. Cal. Dec. 1, 2005); Alsbrook v. City of Maumelle,
3  184 F.3d 999, 1005 n. 8 (8th Cir. 1999); Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir.
4  2002).

### 2. Analysis

The Court will dismiss the individual-capacity claims against Schriro and Ryan.

Title II of the ADA prohibits discrimination in programs of a public entity or discrimination by any such entity, which includes "(A) any State or local government; [and] (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1).  Contrary to Plaintiff's assertion that the Court found that claims against individuals were proper, in its screening Order, the Court noted that "it is not clear that a Defendant can be liable in his or her individual capacity because it is not clear that the language of Title II, which . . . refers specifically to 'public entities,' applies to individuals."   (Doc. 61 at 5.)

Courts have held that the language of the ADA precludes the individual-capacity claims against Schriro and Ryan. See Miranda B. v. Kitzhaber, 328 F. 3d 1181, 1187-88 (9th Cir. 2003); Vinson, 288 F.3d at 1156; Alsbrook, 184 F.3d at 1005 n. 8; Walker v. Snyder, 213 F.3d 344, 346 (7th Cir. 2000) (proper defendant in an ADA claim is usually an organization, so there is no individual-capacity liability but noting that plaintiff named the state's director of the Department of Corrections, who stands in for the agency he manages); Miller v. King, 384 F.3d 1248, 1276-77 (11th Cir. 2004).

Likewise, the Rehabilitation Act does not allow for suits against officers in their individual capacities. See Garfield v. Cook County, 2009 WL 40155553 (N.D. Ill. Nov. 19, 2009), citing  29 U.S.C. § 794(b); see also Alston v. District of Columbia, 561 F. Supp. 2d 29, 38 (D.D.C. 2008) (citing Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001) (collecting cases)).)

Therefore, Plaintiff's ADA and RA individual-capacity claims against Ryan and Schriro will be dismissed with prejudice.

### D. Plaintiff as a Qualified Individual

#### 1. Parties' Contentions

##### a. Defendants

Defendants assert that Plaintiff's ADA and RA claims against State Defendants fail because he has not alleged facts to show that he is a qualified individual with a disability and because he has not alleged that these Defendants were sufficiently aware of any disability he may have had. (Doc. 70 at 5-6.)

Defendants contend that to be a "qualified individual" under the ADA, a plaintiff must show that he was capable of performing the essential elements of the job, but by his own admissions, Plaintiff was not qualified to perform the duties of a tomato picker. (Id. at 6.) Plaintiff admits that he was unable to walk distances, which Defendants assert is an inherent requirement of working on a farm picking tomatoes. Plaintiff's admission that he was unable to walk the necessary distance and push the tomato cart demonstrates that he was not qualified to be a tomato picker. (Id., citing 42 U.S.C. § 12111(8) (a "qualified individual with a disability" is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires")); Kennedy v. Applause, Inc., 90 F.3d 1477, 1482 (9th Cir. 1996) (a person who is totally disabled and therefore unable to perform the work, even with accommodation, is not a "qualified individual" under the ADA).)

Defendants also assert that Plaintiff's claims fail because he has not alleged that these Defendants were sufficiently aware of any disability he may have had. (Doc. 70 at 6, citing Duvall v. County of Kitsap, 260 F.3d 1124, 1139 (9th Cir. 2001). Plaintiff alleges that he notified "non-Defendants that he could not perform the essential functions of the non federally-funded-business-program tomato-picking job" and that he asked them—*i.e.*, Eurofresh, Inc. Harvest Manager, Arizona Correctional Industries, EuroFresh, Inc. CEO—to give him another job but Plaintiff does not allege that he notified State Defendants. (Id. at 6.)

///

1  **b.    Plaintiff**

2  Plaintiff asserts that the Court has already determined that Title I of the ADA does not
3  apply here because no employer-employee relationship existed. (Doc. 72 at 7.) He argues
4  that although he has pleaded the heightened Title I "qualified individual" standard, his
5  pleading requirement is that he must allege facts to show that he is "otherwise qualified to
6  receive the benefit" of the ACI program, which means he need only show that he has a GED
7  and that he has no prison disciplinary record. (Id. at 8.)

8  He further argues that if the Court applies the Title I standard, federal regulations
9  define a job task as essential "because the reason the position exists is to perform that
10 function." (Id., citing 29 CFR §1630.2(n).) Plaintiff asserts that walking is not an essential
11 function of the job because the greenhouses were fitted with a track system and electric
12 trolleys and that he so pleaded. (Id., ref. Doc. 58 ¶¶ 14-15, 22-23, 31, 36, 38, 43, 46.)

13 Plaintiff contends that State Defendants were sufficiently aware of Plaintiff's
14 disability. He refers to his Second Amended Complaint and to an alleged ADC Section 504
15 Policy Notice, attached thereto. (Id. at 8-9, ref. Doc. 58 ¶¶ 23-27, 38-39, and Doc. 59, Ex.
16 6.) He asserts that the Policy Notice requires that ADA and RA complaints be directed to
17 ACI. He sent a letter by certified mail to ACI requesting reasonable accommodations. (Id.
18 at 9, ref. Doc. 59, Ex. 6, letter dated October 15, 2008.) He further asserts that Defendants
19 had his medical file as well as some of his VA treatment records. (Id.)

20 **c.    Reply**

21 Defendants reassert that Plaintiff did not meet the essential eligibility requirements
22 under § 12313(2) because he was not physically capable of doing the job. (Doc. 78 at 4.)
23 Under Arizona Law, inmates are required to engage in "hard labor" which is defined as not
24 including physical activity "that is not within the ability of an individual prisoner." (Id. at
25 4-5, citing Ariz. Rev. Stat. § 31-251(A),(B), (D).) A prisoner's work assignment must be
26 commensurate and compatible with the condition and *limitations of his physical* and mental
27 *health*. Ariz. Rev. Stat. § 31-251(B)(1)(emphasis added). Defendants argue that, therefore,
28 according to Plaintiff's allegations, the job duties were not within Plaintiff's abilities and

- 9 -

1   were not commensurate and compatible with his limitations. (Doc. 78 at 5.) Defendants also
2   assert that Plaintiff's reliance on the VA disability rating as evidence of a disability is
3   misplaced. (Id. at n. 6, citing Thorn v. BAE Sys. Haw. Shipyards, Inc., 586 F. Supp. 2d
4   1213, 1221 (D. Haw. 2008); Burkhart, 2009 WL 528603, at *15.)

   Defendants further argue that although Plaintiff asserted that he asked for reasonable accommodations and was ignored and that ACI refused to engage in the interactive process, Plaintiff's claim fails because the burden is on ADA claimants to show that they requested specific accommodations that would remove program or work barriers. (Doc. 78 at 6, citing Kennedy, 90 F.3d at 1481.) Defendants assert that the Court cannot presume that Plaintiff's legal conclusions are true. (Doc. 78 at 6.)

   Defendants also contend that the record does not support a finding that Plaintiff made any such requests for accommodations to State Defendants or that he notified them of his alleged disability. Plaintiff asserts only that he notified Eurofresh and ACI verbally and in writing of his disability and requested an accommodation and that on October 15, and November 10, 2008, Plaintiff sent written notification and requested reasonable accommodations to ACI in accordance with Arizona Defendants' Section 504 Policy Notice. (Doc. 58, Ex. 6.) Defendants argue that the Policy Notice attached to Plaintiff's Second Amended Complaint is not properly considered by the Court; in addition to being hearsay, it is marked "DRAFT" and cannot be construed as an official document, and, moreover, Plaintiff did not comply with its provisions. (Doc. 78 at 6, n. 7.) They also argue that Plaintiff did not serve the State per "Arizona Rule of Civil Procedure 4.1(h), prescribing the proper method to serve the State of Arizona." (Doc. 78 at 7.)

   Defendants contend that the October 15 letter does not provide notice of a disability or request a specific accommodation; "instead [Plaintiff] largely monkeys legal conclusions from statutory language but does not express the necessary facts. . . ." (Id.) The letter states:

> . . . I have a physical impairment that substantially limits one or more of the major life activities. Unfortunately, because of my disability, I am unable to walk for long periods of time without experiencing physical pain.
>
> . . . Most of the inmates, including myself, perform tomato picking. However, there have been instances where inmates worked in the pack-house of the

>facility, as well as other positions. At this time, due to my disability, I am requesting a position at the Snowflake facility that does not require walking for long periods of time, as well as pushing heavy carts.

(Doc. 59, Ex. 6, letter dated October 15, 2008.)

Defendants also argue that although walking is considered a major life activity under the ADA and RA, "moderate difficulty or pain experienced while walking does not substantially limit the life activity of walking." (Id. at 8, citing Penny v. United Parcel Service, 128 F.3d 408, 415 (6th Cir. 1997).) They assert that Plaintiff's pain and difficulty walking did not rise to the level of a disability. (Doc. 78 at 8.)

Defendants note that Plaintiff acknowledged that ACI Industry Programs specialist John Poe and two Eurofresh representatives met with Plaintiff on October 16 and that a Eurofresh manager advised him that "there are no positions available at the Eurofresh facility for him." (Id. at 9, ref. Doc. 59-2 at 6, 8, 11.) They assert that Plaintiff provides no indication of the meaning of reasonable accommodation other than asking for a change in job duties. (Id.)

Defendants also argue that because Plaintiff did not provide the requisite notice to them, Plaintiff cannot show discriminatory intent—that Defendants were deliberately indifferent. (Doc. 78 at 9.) They reject Plaintiff's argument that ADC had notice of his disability because it had custody of Plaintiff's medical records. (Id.) Pursuant to ADC Department Order 1104, inmate records are private and not reviewable absent authorization. (Id.)

### 2.     Analysis

The Court finds that Plaintiff has alleged sufficient facts to state a claim that he is a qualified individual with a disability. A qualified individual is "an individual with a disability who, *with or without reasonable modifications to rules, policies, or practices*; the removal of architectural, communication, or transportation barriers; or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2) (Emphasis added). First, the Court rejects Plaintiff's argument that he need only

- 11 -

1  plead that he qualifies for the ACI program. ACI is a work program; to be a qualified
2  individual under Title II, Plaintiff would have to be able to perform essential ACI work
3  assignments, with or without modifications. In addition, the specific accommodations
4  Plaintiff sought were to have his work duties at Eurofresh changed. Likewise, the Court
5  rejects Defendants' argument that Plaintiff fails to state a claim because he admits that he
6  was unable to perform the essential functions of his job as a tomato picker. Borrowing from
7  ADA Title I case law, a plaintiff must allege that he can perform the essential duties of his
8  job *with or without modifications*. Kennedy, 90 F.3d at 1481. Plaintiff never claimed that
9  he could not work even with accommodations or modifications.

10  Furthermore, the Court rejects Defendants' claim that Plaintiff fails to sufficiently
11  allege a physical impairment that substantially limits one or more of his major life activities.
12  See 42 U.S.C. § 12102. First, this argument was not raised until the reply. See Cedano-
13  Viera v. Ashcroft, 324 F.3d 1062, 1066 n.5 (9th Cir. 2003) (declining to consider an issue
14  raised for the first time in a reply brief). But even if the Court were to consider the argument,
15  it fails.

16  Plaintiff asserts that he has an injured foot and that as a result he cannot walk for long
17  periods of time without serious pain. As Defendants note, walking is a major life activity.
18  See Bragdon v. Abbott, 524 U.S. 624, 638 (1998) (quoting 45 C.F.R. § 84.3(j)(2)(ii)). In
19  addition to showing that Plaintiff has an impairment that affects a major life activity, he must
20  show that the limitation on the major life activity is substantial.

21  State Defendants argue that Plaintiff's VA disability rating does not establish that
22  Plaintiff is disabled under the ADA. (Doc. 78 at 5, n. 6, citing Thorn v. BAE Sys. Haw.
23  Shipyards, Inc., 586 F. Supp. 2d 1213, 1221 (D. Hawai'i 2008).) But the issue in a Rule
24  12(b)(6) motion is not whether a plaintiff *establishes* his claim but whether he has *stated* one.
25  Thorn notes that, on summary judgment, the plaintiff's VA disability status substantiated that
26  he had impairments but that evidence of impairments, without more, was insufficient to show
27  that the impairments substantially limit a major life activity. Id. Thus, Thorn does not
28  support dismissal for failure to state a claim. Likewise, in Burkhart, on which Defendants

- 12 -

1  also rely, the district court noted that on summary judgment the plaintiff failed to offer
2  sufficient detail to substantiate the existence of an impairment to the activity of sleep and that
3  reliance on the VA rating regarding the plaintiff's PTSD was insufficient to create a genuine
4  issue of fact for trial.  2009 WL 528603, at*14.

5  Determining whether an individual has a disability within the meaning of the ADA
6  is "an individualized inquiry."  Frasier v. Goodale, 342 F.3d 1032, 1039 (9th Cir. 2003).
7  This requires the Court to consider the "nature, severity, duration, and impact" of the
8  impairment.  Id.  And pro se pleadings must be liberally construed.  Hebbe, --- F. 3d --- ,
9  2010 WL 4673711, at *3.  The Court finds that Plaintiff has pleaded sufficient facts to allege
10 that he is a qualified individual with a disability.  The Court also notes that if it were dismiss
11 the Second Amended Complaint on this ground, it would be required to permit Plaintiff to
12 file a third amended complaint.  See Lopez v. Smith, 203 F.3d 1122, 1127-29 (9th Cir. 2000)
13 (*en banc*).

14 The Court also rejects Defendants' argument that Plaintiff's claims fail because he has
15 not alleged that Defendants were sufficiently aware of any disability he may have had.
16 Plaintiff asserted that he sent a letter to ACI on October 15; the letter states that Plaintiff has
17 an impairment that prevents him from walking distances and he asks for a change in job or
18 job duties.  Again, borrowing from Title I cases, reassignment can be a reasonable
19 accommodation.[3]  Barnett v. U.S. Airways, Inc., 228 F.3d 1105, 1117 (9th Cir. 2000),
20 overruled on other grounds, 535 U.S. 391 (2002). The Court finds that the allegations
21 regarding letter of October 15 are sufficient to allege that Plaintiff advised ACI that he
22 believed he had a substantial impairment and was requesting accommodations.

23 The Court also finds that the letter to ACI is sufficient to allege *Defendants'*

---

[3]The Court notes that Plaintiff alleges that *Eurofresh* declined to provide the requested accommodations for Plaintiff at the Eurofresh-operated facility.  It appears, however, that thereafter, ADC provided Plaintiff a new job that did not require prolonged standing and walking.  (Doc. 58, Ex. 2.)  Whether or not this was a reasonable accommodation is a factual question that may be appropriately addressed on summary judgment after a reasonable opportunity for discovery.

- 13 -

awareness of Plaintiff's claim of disability and the need for an accommodation. As noted, ACI is created by statute. Ariz. Rev. Stat. § 41-1622. The ACI statute provides that "Department" means the state department of corrections and "Director" means the director of the state department of corrections. Id. § 41-1621. Section 41-1623 provides that the director shall establish, regulate, and operate ACI and further that "the director shall adopt rules for the administration and management or personnel policies for prisoner workers including wages, hours and conditions of employment." Id. § 41-1623 (A), (G). The ADC website describes ACI a "an integral component of the overall Arizona Department of Corrections prison work program."[4] In addition, Plaintiff submitted with his Second Amended Complaint a Section 504 Policy Notice, dated 4/15/08, with the heading Arizona Department of Corrections.[5] The Notice states that the person responsible for coordinating compliance with Section 504 and Title II of the ADA is the Education Coordinator, Arizona Correctional Industries, 3701 W. Cambridge Ave., Phoenix. Although not addressed to the Education Coordinator, Plaintiff sufficiently pleads that the letter was sent to ACI at the designated address. Moreover, Plaintiff pleads that he spoke with an ACI representative, John Poe, on October 16, at which time they discussed accommodations.

Although Poe is not named as a Defendant, because Title II claims are not properly brought against individuals in their individual capacity—rather, a public entity is the appropriate defendant and the director stands in for the agency—and because the record shows that ADC and the Director are involved in operation of ACI, the Court finds that Plaintiff sufficiently pleads notice to State Defendants. The Court notes that Defendants do not assert that ACI is not a part of ADC. In addition, they offer no legal authority for the suggestion that the State of Arizona must be "served" with a request for accommodations

---

[4]http://www.azcorrections.gov/adc/divisions/newsuppdiv/Hema_Program_Services.aspx

[5]Although Defendants ask the Court not to consider this Notice because it is hearsay, the Court overrules Defendants' objection for purposes of this 12(b)(6) motion; Defendants do not claim that the document is not authentic, merely that it is a draft. Moreover, the Court would reach the same conclusion without the Notice.

- 14 -

1  pursuant to Ariz. R. Civ. P. 4.

2  **E.     Intentional Discrimination**

3  **1.     Parties' Contentions**

4  **a.     Defendants**

5  Defendants assert that "[t]o recover monetary damages under Title II of the ADA or
6  the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the
7  defendant." (Doc. 70 at 7, citing Duvall, 260 F.3d at 1138.)  To establish intentional
8  discrimination, a plaintiff must show that defendants acted with "deliberate indifference,"
9  which requires "both knowledge that a harm to a federally protected right is substantially
10 likely, and a failure to act upon that likelihood." (Id., citing Duvall, 260 F.3d at 1139.)
11 Defendants further assert that prisoners do not have a constitutional right to a prison job or
12 certain educational or vocational training. (Id., citing Baumann v. Arizona Dep't of Corrs.,
13 754 F.2d 841, 846 (9th Cir. 1985) (no constitutional right to jobs and educational
14 opportunities); Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir.1985) (no liberty or properly
15 interest in vocational training); Hoptowit v. Ray, 682 F.2d 1237, 1254-55 (9th Cir.1982) (no
16 constitutional right to rehabilitation). Therefore, absent a
17 federally-protected right, Plaintiff's claims for damages must fail.

18 **b.     Plaintiff**

19 Plaintiff argues that the United States Supreme Court has held that state prisons fall
20 squarely within Title II definition of public entity, and that the Ninth Circuit has held that the
21 RA applies to prisoners. (Id. at 9, citing Penn. Dep't. of Corrs. v. Yetskey, 524 U.S. 206
22 (1998). Therefore, Defendants had knowledge that a harm to a federally protected right was
23 substantially likely. He notes that ADC even included an anti-discrimination clause in the
24 contract with Eurofresh. (Id., ref. Doc. 59 , Ex. 5 at 10.) Plaintiff further argues that Arizona
25 denied and ignored his requests for reasonable accommodation, and instead of allowing him
26 to return to the ACI Program by making such accommodations, they transferred him to a
27 maximum security facility. (Id. at 10.)

28 ///

**c.     Reply**

In their reply, Defendants argue that because Plaintiff did not provide the requisite notice to them, Plaintiff cannot show discriminatory intent; that is, he cannot show that Defendants were deliberately indifferent. (Doc. 78 at 9.)

**2.     Analysis**

The Court rejects Defendants' arguments. Although Plaintiff has no Eighth Amendment right to a prison job or certain educational or vocational training, he has a right under the ADA Title II and under the RA to be free from disability-based discrimination regarding the benefits of a public entity's services, programs or activities. In addition, the Court has already found that Plaintiff pled sufficient facts to show that Defendants were aware that he believed he had a substantial impairment and was requesting accommodations.

**IT IS ORDERED**:

(1)   The reference to the Magistrate Judge is withdrawn as to Defendants State of Arizona, ADC, Schriro, and Ryan's Motion to Dismiss (Doc. 70).

(2) Defendants State of Arizona, ADC, Schriro, and Ryan's Motion to Dismiss (Doc. 70) is **granted in part and denied in part** as follows:

(a) **granted** as to the individual-capacity claims against Schriro and Ryan;

(b) **denied** in all other respects.

(3) The individual-capacity claims against Schriro and Ryan State Defendants' Motion to Dismiss are **dismissed**.

(4)   The remaining claims are against the State of Arizona, ADC, and Schriro and Ryan in their official capacity for violation of the ADA and RA.

DATED this 5th day of January, 2011.

_____
Mary H. Murguia
United States District Judge